**Sheldon L. Pollock**
**Janna I. Berke**
**Elisa S. Solomon**
**John C. Lehmann**
**Rhonda L. Jung**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street, Suite 20-100**
**New York, New York 10004-2616**
**(212) 336-0427 (Solomon)**
**SolomonEl@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GÖKÇE GÜVEN and KALDER, INC.,**<br><br>**Defendants.** | **<u>COMPLAINT</u>**<br><br>**26 Civ. 8716**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Gökçe Güven ("Güven") and Kalder, Inc. ("Kalder," collectively with Güven, "Defendants"), alleges as follows:

**SUMMARY**

1. This action concerns false and misleading statements made by Güven to investors in connection with a $6.7 million securities offering. Güven was the founder, chief executive officer ("CEO"), and largest shareholder of fintech start-up Kalder, a company that she described to investors as helping businesses develop and monetize customer rewards programs.

2. Beginning in approximately April 2024 through at least December 2024 (the "Relevant Period"), Kalder undertook a capital raise to fund its growth and operations (the "Round

B Seed Offering"), and raised nearly $6,705,000 from approximately fifteen investors. In connection with this offering, Kalder and Güven made false and misleading statements to investors about Kalder's financial performance during the year preceding the offering by providing investors with inflated revenue streams, and by overstating the number of customers engaged in revenue-generating contracts. They presented a rosy outlook that simply was not true.

3. As support for these misstatements, Kalder maintained two sets of financial records—one accurate set prepared and maintained by its outside bookkeeper based on data provided directly to the bookkeeper from third party financial institutions, and a second set containing inflated numbers created and communicated to investors at Güven's direction.

4. As reflected in Kalder's actual financial records, the company's monthly revenue was far below the figures presented to prospective investors and the company was not experiencing the consistent and substantial growth that Güven and Kalder trumpeted. Many of the customers that Güven and Kalder claimed were in revenue-generating contracts had in fact signed up for either free-of-charge "demo accounts" or for short-term discounted pilot programs to evaluate Kalder's platform.

5. As Kalder's CEO and largest shareholder, Güven stood to profit both economically and professionally from Kalder's success and from the Round B Seed Offering.

## VIOLATIONS

6. By virtue of this conduct and as further alleged herein, Defendants violated Section 17(a)(2) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(2)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

7. Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The Commission brings this action pursuant to the authority conferred upon it by Securities Act Section 20(b) [15 U.S.C. § 77t(b)], and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

9. The Commission seeks a final judgment: (a) permanently enjoining Defendants and their agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, the federal securities laws and rules this Complaint alleges they have violated; (b) ordering Defendants to pay disgorgement of all ill-gotten gains, together with prejudgment interest, as a result of the unlawful conduct set forth in this Complaint, pursuant to Exchange Act Sections 21(d)(3), (5), and (7) [15 U.S.C. §§ 78u(d)(3), (5), and (7)]; (c) ordering Defendants to pay civil monetary penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) prohibiting Güven from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)] for a period of six years, pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

10. The Court has jurisdiction pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)], Exchange Act Section 27 [15 U.S.C. § 78aa], and 28 U.S.C. § 1331.

11. Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

12. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District. During the Relevant Period, Kalder principally operated out of an office in the Southern District of New York. Additionally, Güven resided within this District during the Relevant Period.

## DEFENDANTS

13. **Güven**, age 27, founded Kalder in June 2022 and served as its CEO from its founding to at least November 2025, including throughout Relevant Period. Güven tightly controlled Kalder, making all important business and operational decisions. Güven is a Turkish national and was a resident of New York, New York during the Relevant Period. Güven has never been registered with the Commission in any capacity. On May 15, 2026, Güven pleaded guilty to one count of securities fraud in *United States v. Güven*, 25-cr-00592-LAK-SN (S.D.N.Y.) ("Criminal Case"), arising from substantially similar facts to those alleged herein.

14. **Kalder** is a private technology company incorporated in Delaware in 2022 with a principal place of business in New York, New York. Kalder described itself to investors as a company that helps businesses create loyalty and rewards programs. Güven was the CEO and largest shareholder of Kalder during the Relevant Period. Kalder announced in July 2026 that certain of its assets are to be acquired by a third-party company.

## FACTS

### A. Background

15. In or about June 2022, Güven founded Kalder and began seeking seed investment for the company.

16. Güven described Kalder to investors as offering a "partner rewards platform" to customers—companies who would subscribe to Kalder's platform—which would "enable high-frequency or high-fandom businesses to replicate the Amex or United Airlines rewards."

17. Kalder's website stated that it is "reshaping customer loyalty by enabling brands to monetize rewards programs effectively" and offering "an easy-to-integrate [Application Programming Interface]" through which "Kalder helps businesses launch profitable loyalty initiatives, deepening customer relationships and gaining valuable insights without the hassle of traditional setups."

18. During the Relevant Period, Kalder was a small company with fewer than ten employees.

19. Güven exercised close control over all aspects of the company, including fundraising.

20. Beginning in or around 2022 and through the Relevant Period, Kalder engaged in fundraising.

21. In exchange for seed funding, investors in these funding rounds received equity interests in Kalder.

22. Beginning in or around November 2022, Güven raised approximately $3 million from investors in the Round A seed offering.

### B. Kalder and Güven Raise Round B Investments Through False and Misleading Statements

23. Beginning in approximately April 2024 and continuing through at least December 2024, Güven raised funds for Kalder in a Round B Seed Offering, ultimately raising approximately

$6,705,000 from at least fifteen investors, including several U.S.-based venture capital firms and individual investors.

24. Güven, as the CEO and founder of Kalder, directed and controlled the drafting and communication of information disseminated to investors, including those who participated in the Round B Seed Offering.

25. For example, Kalder, at Güven's direction, provided prospective Round B Seed Offering investors with a pitch deck, which contained information concerning Kalder's revenue forecasting and the growth of its customer base (the "Pitch Deck").

26. Kalder, also at Güven's direction, provided prospective Round B Seed Offering investors with access to a data room containing certain documents, including spreadsheets purporting to record Kalder's financial performance, some of which Güven created herself and others that were created at her direction ("Data Room").

27. The Pitch Deck and Data Room materials (collectively, the "Offering Documents"), which contained several false and misleading statements concerning Kalder's revenue and the volume and level of engagement of its customers, were provided to Round B Seed Offering investors who then relied upon these materials in deciding to invest in Kalder.

### 1. *Defendants Misled Round B Investors Concerning Kalder's Revenue*

28. The financial information included in the Offering Documents and shared with investors contained drastically different revenue than what was reflected in Kalder's internal financial records.

29. Specifically, Kalder maintained two sets of financial records—one set prepared and maintained by Kalder's third-party bookkeeper based on financial statements from Kalder's financial institutions, and a second set containing inflated numbers created and shared with investors at Güven's direction.

30. The financial records included in the Offering Documents falsely represented Kalder's revenue as steadily increasing month-over-month with an aggregate of approximately $333,337 for the months May 2023 through April 2024.

31. However, Kalder's actual Profit and Loss statement prepared and maintained by its outside bookkeeper reflects that the company's revenue for the period May 2023 to April 2024 totaled only approximately $87,960.

32. The financial records provided to investors were also falsely marked as being the records prepared by Kalder's outside bookkeeper, when in fact these records has been modified and included inflated financials.

33. Not only did the financial information Güven provided to investors in the Offering Documents falsely inflate Kalder's total revenue, but it also falsely and misleadingly indicated that Kalder was experiencing a period of sustained growth.

34. In fact, as reflected in Kalder's actual Profit and Loss statement, the company's revenue fluctuated during the period from May 2023 through April 2024 but did not experience the consistent pattern of steady growth described to investors.

35. The following chart provides a month-by-month comparison between the inflated revenue presented in the Round B Seed Offering Documents and the actual revenue reflected in Kalder's Profit and Loss statement maintained by its third-party bookkeeper:

| | **May 2023** | **Jun 2023** | **Jul 2023** | **Aug 2023** | **Sept 2023** | **Oct 2023** |
|---|---|---|---|---|---|---|
| **Revenue Figures Provided to Investors** | $5,800 | $11,420 | $6,565 | $6,565 | $7,620 | $14,920 |
| **Actual Revenue** | $2,500 | $11,420 | $2,565 | $2,501 | $4,920 | $4,920 |

| | Nov 2023 | Dec 2023 | Jan 2024 | Feb 2024 | Mar 2024 | Apr 2024 |
|---|---|---|---|---|---|---|
| **Revenue Figures Provided to Investors** | $12,917 | $25,833 | $34,516 | $46,083 | $75,249 | $85,848 |
| **Actual Revenue** | $7,271 | $12,089 | $9,785 | $11,249 | $8,230 | $10,509 |

36. Güven and Kalder prepared and provided to certain investors additional false and misleading information concerning Kalder's financial performance for the period from May 2024 to August 2024.

37. Like the information provided for the earlier period, the information covering May 2024 to August 2024 that Kalder and Güven provided to investors inflated the company's revenue as compared to the company's internal records.

38. For example, in or around October 2024, Güven provided at least one investor with a spreadsheet containing inflated revenue figured for the period between May 2024 and August 2024.

39. This spreadsheet reflected steadily increasing month-over-month revenue with an aggregate of approximately $363,670 for the months May 2024 through August 2024.

40. However, Kalder's actual Profit and Loss statement reflects that the company's revenue for the period May 2024 through August 2024 totaled only approximately $92,587.

*2. Defendants Misled Round B Investors Concerning Kalder's Customer Engagement*

41. In addition to misrepresenting Kalder's revenue, Defendants also misrepresented the size and level of engagement of Kalder's customer base.

42. The Offering Documents provided to Round B Seed Offering investors by Güven or at her direction misrepresented the number of customers that had engaged in revenue-generating contracts with Kalder.

43. Kalder represented to investors that it would generate revenue through subscription fees paid by customers.

44. The Pitch Deck provided to Round B Seed Offering investors falsely asserted that approximately 26 brands were "using Kalder."

45. In fact, many of the 26 brands identified as customers in the Offering Documents had not actually entered into an agreement with Kalder, and others had entered only into pilot programs for Kalder to provide services for a limited period and were paying significantly discounted fees.

46. Because many of these 26 purported customers had not entered into a long-term contract with Kalder, the company was not realizing any revenue from the majority of companies Güven claimed to be customers, nor did Güven have a basis to expect that Kalder would generate such revenue in the future.

47. The Pitch Deck also overstated Kalder's expected Annual Recurring Revenue ("ARR"), which represents the value of subscription-based revenue that Kalder could expect to generate annually from ongoing customer contracts and renewals, which is a metric available to investors to evaluate growth of the company.

48. The Pitch Deck falsely claimed that ARR had grown to over $1.2 million by March 2024 and included the following chart, which suggested that Kalder had experienced substantial and continuous growth in ARR from February 2023 to March 2024:




49. However, the representation that ARR had grown to over $1.2 million by March 2024 and the chart were false and misleading because this suggested to investors that Kalder expected to receive that revenue annually based on existing customer contracts when in fact Kalder and Güven knew there had not been a sufficient number of executed customer contracts to generate that revenue.

50. In response to questions from prospective investors, Güven also provided false and misleading information concerning the status of Kalder's customer base.

51. For example, on April 10, 2024, a prospective investor asked Güven to add "top line figures" to a sales "pipeline" reflecting anticipated customers. ("Kalder Pipeline") that had been shared with investors.

52. The next day, Güven messaged a Kalder sales team member and instructed that employee to "add top line figures in this pipeline and make it add to more than 15m+" and emphasizing that it "has to add [to] more than 15m ARR."

53. In a later message, Güven told the employee to add under "expected expansion . . . all the brands we ever talked with" without directing the employee to limit it to brands that had expressed interest in Kalder's services or that were close to engaging in contracts.

54. Later that day, Güven sent the Kalder Pipeline to the prospective investor, with the note that it "does not include customers that are not close to finish line so you will see a short-term list that comes to $15m+[.]"

55. However, this representation concerning the Kalder Pipeline was false and misleading because the ARR included customers that were "not close to finish line."

56. Moreover, Güven's email to this investor separately falsely claimed that there was a "bump" to ARR due to a contract with a customer for its United States and United Kingdom entities, when in fact that customer had not signed any such agreement.

57. Similarly, in November 2024, Güven provided an update to investors ("November 2024 Investor Update") falsely claiming that Kalder had reached "$1.3M ARR, with additional deals in the closing/activation stage" identifying several customers as being near closing a deal with Kalder.

58. The update noted that one of those customers was "in the process [of] joining as a rewards customer and committing to a $1.5M-$3M note at a higher valuation, signaling strong market validation."

59. However, many of the customers that Güven identified as being "in the process [of] joining" were not in fact close to finalizing a customer deal and in fact none of them became Kalder customers at least during the Relevant Period.

60. Güven and Kalder also took steps to generate significant publicity based on Kalder's purported success and touted that publicity to investors.

61. In the November 2024 Investor Update, Güven wrote that "Kalder will be **the cover of Forbes 30 Under 30 Marketing & Advertising (2025) Category** for our rewards platform." (emphasis in original).

62. The November 2024 Investor Update then asked investors for help to "Amplify Kalder's . . . Fundraise Announcement."

63. Güven was ultimately included in the *Forbes*' "30 Under 30" List for Marketing & Advertising in December 2024, and the accompanying *Forbes* article reported that Kalder had 28 clients, 25,000 partnering merchants, and had generated $1.5 million in revenue in 2024.

64. After the *Forbes* article was published, Kalder and Güven circulated the article to prospective investors.

65. However, as described herein, the customer, partnership and revenue numbers described in the *Forbes* article were false.

66. Güven admitted at her plea Allocution in the Criminal Case ("Allocution") that "between 2024 and 2025, as the founder and chief executive officer of Kalder, a technology company headquartered in Manhattan, I raised seed round investment for Kalder. In some of these calls and e-mails, I made statements about Kalder's annual recuring [sic] revenue and about the status of certain brand partnerships that I knew at the time I made them were not accurate."

67. Güven also admitted at her Allocution that she understood investors would receive an equity interest in Kalder in the form of securities in connection with those false statements.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a)(2) (Güven and Kalder)**

68. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 67.

69. Defendants, directly or indirectly, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, have knowingly, recklessly, or negligently obtained money or property by means of one or more untrue statements of material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70. By reason of the foregoing, Defendants, directly or indirectly, have violated and, unless enjoined, will again violate, Securities Act Section 17(a)(2) [15 U.S.C. § 77q(a)(2)].

**SECOND CLAIM FOR RELIEF**
**Violations of Exchange Act Section 10(b) and Rule 10b-5(b) Thereunder (Güven and Kalder)**

71. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 67.

72. Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73. By reason of the foregoing, Defendants, directly or indirectly, have violated and, unless enjoined, will again violate, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently enjoining Defendants and their agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a)(2) [15 U.S.C. § 77q(a)(2)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)];

**II.**

Ordering Defendants to disgorge all ill-gotten gains they received, directly or indirectly, as a result of the alleged violations, together with prejudgment interest, pursuant to Exchange Act Sections 21(d)(3), (5), and (7) [15 U.S.C. §§ 78u(d)(3), (5), and (7)];

**III.**

Ordering Defendants to pay civil monetary penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**IV.**

Prohibiting Güven from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)] for a period of six years, pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and

**V.**

Granting any other and further relief the Court may deem just and proper.

## JURY DEMAND

The Commission demands a trial by jury.

Dated: New York, New York
October 2, 2026

Respectfully submitted,

/s/ Elisa S. Solomon
Janna Berke
Elisa S. Solomon
John Lehmann
Rhonda L. Jung
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004-2616
(212) 336-0427 (Solomon)
SolomonEl@sec.gov